MELVIN A. FELBER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Felber v. Commissioner
Docket Nos. 13312-91, 23226-91
United States Tax Court
T.C. Memo 1992-418; 1992 Tax Ct. Memo LEXIS 439; 64 T.C.M. (CCH) 261; July 23, 1992, Filed *439 Decision will be entered under Rule 155. For Melvin A. Felber, pro se. For Respondent: Anthony S. Gasaway. PATE
PATE
MEMORANDUM OPINION PATE, Special Trial Judge: These cases were assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] They were consolidated for purposes of trial, briefing, and opinion. Respondent determined deficiencies in petitioner's 1987 and 1988 Federal income taxes of $ 2,632 and $ 977, respectively. After a concession by petitioner, [2] the issues for our consideration are: (1) Whether petitioner may deduct certain travel, lodging, meals, and entertainment expenses; (2) whether petitioner may deduct contributions made to Individual Retirement Accounts for himself and his wife for 1987; and (3) whether petitioner is liable for self-employment tax on his farm income for 1988. *440 Some of the facts have been stipulated and are so found. The Stipulation of Facts, Supplemental Stipulation of Facts, and attached exhibits are incorporated herein by this reference. Melvin A. Felber (hereinafter petitioner) filed joint income tax returns with his wife, Erma S. Felber, for 1987 and 1988 with the Internal Revenue Service Center in Kansas City, Missouri. [3] He resided in Flourissant, Missouri, when he filed his petition. I. Traveling Expenses
St. Louis Expenses
Petitioner is an aircraft engineer. In 1969, he moved with his wife and children to St. Louis, Missouri. His children attended and graduated from St. Louis schools. During the years in issue, petitioner owned a farm in Bison, Oklahoma. Starting in March 1969, petitioner worked as a senior design engineer for 4 years and 5 months for McDonnell-Douglas Corp. in St. Louis. From September 1973 through October 1976, he *441 worked as an engineer for Brewer Machine and Gear Co. in St. Louis. From January 1977 through February 1978, he worked for C.D.I. as an engineer specialist in Peoria, Illinois. He then worked from February through November 1978, as a senior design engineer for Belcan in West Palm Beach, Florida. From November 1978 through September 1984, petitioner worked as a senior design engineer for Ewing Technical Design, Inc. (hereinafter Ewing), in St. Louis. From September 1984 through April 1987, he worked as a senior project engineer for Prospective Computer Analysts, Inc. (hereinafter PCA), also in St. Louis. Thereafter, during the latter part of 1987 and the beginning of 1988, petitioner worked for Technical Aid Corporation in Hartford, Connecticut. In June 1988, he returned to St. Louis and worked there for the balance of the year. On his 1987 and 1988 joint Federal income tax returns, petitioner deducted expenses for travel, meals, and entertainment. He claims that such expenses are deductible business expenses because they were paid while he was away from his home in Bison. Respondent disallowed the St. Louis expenses, maintaining that petitioner was not away from home because *442 his tax home for 1987 and 1988 was St. Louis. In general, section 162 allows a taxpayer to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Included therein is section 162(a)(2), which specifically allows a taxpayer to deduct traveling expenses, including meals and lodging, if such expenses are: (1) Ordinary and necessary; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465, 470 (1946). The concept of "home" in tax cases generally is raised when the taxpayer lives in one city, works in another, and deducts expenses incurred in traveling between such cities. In such cases, the Supreme Court has held that "home", for purposes of section 162(a)(2), means the vicinity of the taxpayer's principal place of business. Commissioner v. Flowers, supra; see also Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Daly v. Commissioner, 72 T.C. 190, 195 (1979), affd. en banc 662 F.2d 253 (4th Cir. 1981). In coming to this conclusion, the Supreme *443 Court reasoned that the expenses of traveling to and from the city in which the taxpayer's residence is located are not connected with the taxpayer's business but, instead, are personal living expenses resulting from the taxpayer's decision to maintain his residence in a place other than the city in which his business is located. Commissioner v. Flowers, supra; Foote v. Commissioner, 67 T.C. 1, 3-4 (1976); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). There is, however, an exception to this general rule when the taxpayer's employment is only temporary. Peurifoy v. Commissioner, 358 U.S. 59 (1958); Kasun v. United States, 671 F.2d 1059 (7th Cir. 1982). Employment generally is considered "temporary" if it can be expected to last only for a short period of time. Mitchell v. Commissioner, supra; Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (6th Cir. 1971). The reason for allowing the deduction of traveling expenses for temporary employment is to ease the burden which falls upon a taxpayer *444 who, because of the exigencies of his trade or business, must bear the expenses of both maintaining a residence and living on the road. Rosenspan v. United States, 438 F.2d 905, 912 (2d Cir. 1971); Bochner v. Commissioner, 67 T.C. 824, 828 (1977). In contrast, "indefinite" employment exists when the work is expected to continue for an indeterminate or substantially long period of time. Cockrell v. Commissioner, 321 F.2d 504, 507 (8th Cir. 1963), affg. 38 T.C. 470 (1962). The fact that employment lacks permanence does not make that employment temporary. Garlock v. Commissioner, 34 T.C. 611 (1960). Rather, employment is considered "indefinite" rather than "temporary" unless termination is foreseeable within a short period of time. Michel v. Commissioner, 629 F.2d 1071 (5th Cir. 1980), affg. T.C. Memo. 1977-345. Even if a job is temporary at the time it is accepted, later developments may show that it has become indefinite. See Boone v. United States, 482 F.2d 417 (5th Cir. 1973); Kasun v. United States, supra. *445 Applying these criteria to petitioner's employment history shows that his tax home is in St. Louis. He moved there in 1969 and has maintained a home there ever since. Moreover, he has worked in and around the St. Louis area for much of the past 23 years. This pattern of employment clearly establishes that his work in the St. Louis area was not temporary. See Ellwein v. United States, 778 F.2d 506, 510-511 (8th Cir. 1985); Tirheimer v. Commissioner, T.C. Memo. 1992-137. Nevertheless, petitioner contends that his home is in Bison because: (1) He maintained Bison as his permanent address throughout his career; (2) he maintains business contacts in Bison, i.e., the Waukomis State Bank and the Bison Cooperative Association; (3) he receives disability benefits from the Veterans' Administration every month at the Bison address; and (4) he and his wife file and pay Oklahoma state income tax as Oklahoma residents. Despite these arguments, the fact remains that petitioner maintained a home in St. Louis in which he has lived for more than 20 years. He did not maintain a residence in Bison. Moreover, he has worked in the St. Louis area during much *446 of this time. Based on these facts, we find that petitioner's tax home was in St. Louis. Accordingly, we hold that he may not deduct expenses he incurred in St. Louis because he was not "away from home" within the meaning of section 162(a)(2). Hartford Expenses
During the latter part of 1987 and the beginning of 1988, petitioner also paid transportation, lodging, meals, and entertainment expenses attributable to his Hartford employment. The parties agree that petitioner's employment in Hartford was temporary and most of the deductions he claimed have been allowed by respondent. However, respondent disallowed certain airfares and airport parking fees which petitioner incurred for trips between Hartford and St. Louis on the grounds that such expenses are personal in nature. Petitioner maintains that these expenses are deductible because they were incurred to search for employment. He contends that he traveled between Hartford and St. Louis in order to contact the manager at Ewing with respect to prospective job interviews. However, the record shows that petitioner: (1) Never completed a call to the manager at Ewing while on these trips; (2) did not personally interview *447 with the manager at Ewing; (3) did not have any in-person interviews with any prospective employers during any of his trips; and (4) did not obtain new employment during the entire period. Moreover, it appears that petitioner routinely left for St. Louis after work on Friday evenings, and flew back to Hartford on Sunday evenings. Of the 11 round trips he took during 1987: (1) The 1st was over the July 4 weekend; (2) the 3rd was over the Labor Day Weekend; (3) the 9th was over Thanksgiving; and (4) the 11th was over Christmas and New Year's Day. Because all of his trips were over weekends, and many of them included holidays, we conclude that petitioner did not fly to St. Louis primarily to seek employment, but rather to return to his residence for personal reasons. We have determined that petitioner's tax home for the years in issue was St. Louis. Except for petitioner's travel expense to Hartford to commence work, and back to St. Louis upon termination of his employment (which respondent has already determined is deductible), we find no business purpose for his trips from Hartford to St. Louis. Therefore, we hold that such expenses are not deductible. Mrs. Felber's Expenses
*448 Petitioner also deducted the cost of his wife's lodging and meals in St. Louis for 1987 and 1988. Respondent maintains that such expenses are not deductible because Mrs. Felber was not "away from home" within the meaning of section 162(a)(2). We have already found that petitioner lived in St. Louis for the years in issue. During these years, Mrs. Felber was employed as a cook for a public school in the St. Louis area. Based on these facts we find that Mrs. Felber resided and worked in the same area and, therefore, was not "away from home" as required by section 162(a)(2). Accordingly, we hold that her meals and lodging costs are not deductible. II. Contributions to Individual Retirement Accounts
From September 1984 until April 1987, PCA maintained a section 401(k) plan for its employees. During 1987, petitioner contributed $ 816 to such plan. On his 1987 joint Federal income tax return, petitioner reported adjusted gross income of $ 56,689, after deducting $ 4,000 ($ 2,000 each for himself and Mrs. Felber) for contributions to their Individual Retirement Accounts (hereinafter IRAs). Respondent disallowed the entire deduction. In general, a taxpayer is entitled to *449 deduct the amount contributed to an IRA. Sec. 219(a); sec. 1.219-1(a), Income Tax Regs. However, in any taxable year, the deduction may not exceed the lesser of $ 2,000 or an amount equal to the compensation includable in the taxpayer's gross income for such taxable year. Sec. 219(b)(1). In addition, the amount of the deduction is limited where the taxpayer or his spouse was, for any part of the taxable year, an active participant in a retirement plan qualified under section 401(a). Sec. 219(g)(1), (5). An individual is considered an active participant in a plan if he is accruing benefits under the plan, even if he only has forfeitable rights under the plan and such rights are forfeited before the end of the taxable year. Hildebrand v. Commissioner, 683 F.2d 57 (3d Cir. 1982), affg. T.C. Memo. 1980-532; Eanes v. Commissioner, 85 T.C. 168 (1985). Section 401(a) includes stock bonus plans, pension plans, profit-sharing plans, and section 401(k) cash or deferred arrangement plans. Sec. 401(a), (k). Further, the deduction is also limited by the amount of adjusted gross income reported on the taxpayer's income tax return. *450 In the case of a taxpayer filing a joint return, the deduction is reduced by a ratio determined by dividing the excess of the taxpayer's adjusted gross income over $ 40,000, by $ 10,000. Sec. 219(g)(2) and (3). This provision results in total disallowance of the IRA deduction where the total adjusted gross income reported on a joint income tax return exceeds $ 50,000. During 1987, petitioner was an active participant in and made contributions to a section 401(k) plan maintained by his employer. Because he was an active participant in such plan during 1987, he is not entitled to deduct the contribution he made to his IRA. Further, because he and Mrs. Felber jointly reported adjusted gross income in excess of $ 50,000, they may not deduct the contribution to Mrs. Felber's IRA. Nevertheless, petitioner argues that he is entitled to his IRA deduction because the section 401(k) plan maintained by his employer was a plan under which he received no credit for company funds. Therefore, he maintains that the plan is not a qualifying plan under the applicable statute. To the contrary, as previously stated, section 219 contemplates, inter alia, section 401(k) plans, such as the one *451 in which petitioner participated. This holds true even if his rights to an employer contribution were forfeited before the end of the year. Petitioner next argues that he may deduct his contribution because he was advised to do so by the plan manager. However, it is well established that this Court is not bound by the erroneous legal advice given to a taxpayer. Dixon v. United States, 381 U.S. 68, 72-73 (1965); Martin's Auto Trimming, Inc. v. Riddell, 283 F.2d 503, 506 (9th Cir. 1960). Finally, petitioner argues that Internal Revenue Service Publication 17 allows such deduction. However, IRS Publication 17 clearly states that no deduction is allowed when the taxpayer or his spouse is covered by an employee's retirement plan and their adjusted gross income exceeds $ 50,000. For these reasons, we hold that petitioner may not deduct the $ 4,000 that was contributed to IRAs for himself and Mrs. Felber for 1987. III. Self-Employment Tax
Petitioner owns a wheat farm in Bison. On Schedule F of his 1988 joint Federal income tax return, he reported net profits from this farm of $ 511.76. Because petitioner reported net farm income in *452 excess of $ 400, respondent determined that he is liable for self-employment tax thereon. Petitioner contends that he is not subject to self-employment tax on the net income from his farm because he did not "materially participate" in the operation of such farm. Petitioner's income from the farm was derived from the sale of his portion of harvested wheat raised by a tenant farmer. His role in the production of such wheat was minimal. He contacted the tenant once or twice monthly. He did not oversee or manage the farm's operations. A cooperative association, of which he is a member, acts as his agent in storing and selling the wheat. Petitioner does, however, follow the "market" and checks the price of wheat to determine when he wants his wheat sold. Section 1401 provides that a tax shall be imposed on the self-employment income of every individual. To be characterized as self-employment income, earnings must arise from a "trade or business". Sec. 1402(a). The phrase "trade or business" as used in section 1402(a) has the same definition as in section 162. Sec. 1402(c). Generally, rentals from real estate are excluded in computing net earnings from self-employment. Sec. *453 1402(a)(1). However, section 1402(a)(1) includes as self-employment income: any income derived by the owner * * * of land if (A) such income is derived under an arrangement, between the owner * * * and another individual, which provides that such other individual shall produce agricultural * * * commodities * * * on such land, and that there shall be material participation by the owner * * * in the production or the management of the production of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant * * * with respect to any such * * * commodity. This exception includes arrangements such as share-cropping or share-farming arrangements, but only where the owner materially participates in the production or the management of the production of such commodities. Estate of Coon v. Commissioner, 81 T.C. 602, 611-612 (1983); see sec. 1.1402(a)-4(b), Income Tax Regs.
Petitioner does not live in the area where his farm is located nor does he telephone the tenant or visit his farm very often. Although this record discloses little about the arrangement petitioner had with his tenant, we are convinced that petitioner *454 participated only minimally in the production of or the management of the production of the wheat. Therefore, we find that petitioner did not "materially participate" in the production of the wheat on his farm in Bison, Oklahoma. Mangels v. United States, 828 F.2d 1324, 1326-1328 (8th Cir. 1987). Accordingly, we hold that he is not liable for self-employment tax on the income derived therefrom. Based on the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. At trial, petitioner conceded that he should have reported on his 1988 Federal income tax return $ 113 of income he received from a State tax refund.↩
3. Although joint income tax returns were filed for both years, Mrs. Felber is not a petitioner in this case.↩